*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. R. SMALL, Minor.

UNPUBLISHED
June 25, 2019

No. 345264
Oakland Circuit Court
Family Division
LC No. 2016-848428-NA

Before: MURRAY, C.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Respondent-father appeals the trial court's order terminating his parental rights to the minor child. We affirm.

## I. BACKGROUND

In November 2016, the Department of Health and Human Services filed a petition requesting that the court take jurisdiction over the child and order removal from the mother's home following the mother's hospitalization.[1] Respondent admitted at a family team meeting that he only sporadically provided money for the young child, did not visit regularly and was unable to plan for her. The trial court authorized the petition. When the proceedings resumed in January 2017 for a preliminary hearing, respondent was incarcerated in county jail for violating the terms of his probation. The caseworker met with respondent in jail and he signed a parent-agency treatment plan; he later pleaded no contest to the petition.

When respondent was released from jail in March 2017, he contacted the caseworker and was referred for services. Respondent also began participating in parenting time. In May 2017, however, he was sentenced for possession of methamphetamine. He was released on probation into an inpatient rehabilitation program. But respondent was soon terminated from that program

---

[1] The child's mother was also a respondent in the lower court proceedings. Due to progress made by the mother, the supplemental petition to terminate her parental rights was withdrawn.

and a warrant was issued for his arrest. The caseworker was unable to reach respondent and did not know his location.

Respondent was eventually jailed for his probation violation and the caseworker met with him in October 2017. Respondent indicated that he was not maintaining contact because of his "pending legal issues" but intended to reengage in services upon his release from jail later that month. Respondent, however, did not follow up with the caseworker. At the next review hearing in January 2018, respondent's whereabouts were unknown and he had not contacted his attorney or the caseworker. In March 2018, the caseworker reported that she spoke with respondent by phone and that respondent failed to provide his current address. The court ordered petitioner to file a supplemental petition to terminate respondent's parental rights.

In July 2018, respondent appeared by telephone for the termination hearing. He explained that he had moved to Georgia in January 2018 but was now back in Michigan. Respondent maintained that he was now ready to participate in services. The trial court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*) (desertion for 91 or more days without seeking custody), (c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to child if returned to the parent). The court also found that termination was in the child's best interests.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding clear and convincing evidence to terminate his parental rights under multiple statutory grounds. We review a trial court's determination regarding a statutory ground for termination for clear error. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000).

Clear and convincing evidence supported termination under MCL 712A.19b(3)(a)(*ii*).[2] Before the initial petition was filed in November 2016, respondent did not visit his daughter regularly and only sporadically provided support. Afterward, respondent was incarcerated for several months. When he was released in March 2017, he began participating in services and visited the child for about six weeks. But between May 4, 2017, and the termination hearing on July 30, 2018, respondent did not participate in services or visit the child. He also did not reach out to the child's maternal grandmother, with whom she was placed. The workers testified that respondent never asked for updates about the child or provided support for the child. Respondent admitted that he only received updates about the child because his family continued

---

[2] Termination is appropriate under MCL 712A.19b(3)(a)(*ii*) when there is clear and convincing evidence presented that "[t]he child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period."

to visit her. For more than a year, respondent avoided the caseworkers and failed to attend hearings. We are not left with a definite and firm conviction that the trial court erred by finding that respondent deserted the child for 91 or more days and did not seek custody during that period.

With respect to MCL 712A.19b(3)(c)(*i*),[3] when the case began, respondent did not see or support the child regularly, and when the mother was hospitalized, respondent was unable to provide care for the child. Following six weeks of active participation in services and parenting time toward the beginning of the case, respondent abruptly cut ties with the child and avoided the proceedings. By the time of the termination hearing, the conditions that led to the adjudication continued to exist. Outstanding questions existed regarding substance abuse and mental health because of respondent's lack of participation with his parent-agency treatment plan. Considering respondent's unemployment and history of unstable housing, he failed to demonstrate that he could plan for the child. Although respondent testified at the termination hearing that he was willing to participate in all required services, he had repeatedly made such assurances to workers throughout the proceedings. Given respondent's lack of participation and progress, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent would resolve his continuing issues within a reasonable time. Thus, clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*). For the same reasons, the trial court did not clearly err in finding that respondent failed to provide proper care and custody for the child and that there was no reasonable expectation that he would be able to provide proper care and custody within a reasonable time considering the child's age. See MCL 712A.19b(3)(g).[4]

Respondent also argues that petitioner failed to make reasonable efforts toward reunification. We review the trial court's finding that petitioner made reasonable reunification efforts for clear error. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

---

[3] Termination is appropriate under MCL 712A.19b(3)(c)(*i*) when there is clear and convincing evidence present that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

[4] Because the trial court did not clearly err in finding sufficient evidence to terminate respondent's parental rights under multiple statutory grounds, we decline to address whether termination under MCL 712A.19b(3)(j) was clearly erroneous. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Petitioner has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2); *In re Mason*, 486 Mich at 152. Although petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

Consistent with the parent-agency treatment plan, respondent contacted petitioner when he was released from jail at the beginning of March 2017. The caseworker then referred him for services, including a PACE assessment, drug screens, and in-home parent education. Respondent began services, but was sentenced for possession of methamphetamine in early May 2017. Respondent thereafter violated his terms of probation and a warrant was issued for his arrest. The caseworker was unable to contact respondent during this time and did not know his location. Respondent was eventually incarcerated and the caseworker visited him in jail in mid-October 2017. Respondent told the caseworker that he wanted to re-engage with services. However, respondent never contacted the casework upon his release and moved to Georgia in early 2018 without informing the caseworker.

Given that history, respondent's contention that petitioner erred by not re-referring him for services after his last incarceration is without merit. Respondent was obligated to communicate with the caseworker when he was released from jail and to provide a home address for the referrals. Instead, he avoided the caseworker and refused to provide his address. As the trial court found, respondent "had not made himself available to complete the parent agency agreement." For the same reasons, respondent's contention that petitioner did not offer him adequate services rings hollow. Given respondent's lack of cooperation and participation in his treatment plan, we cannot conclude that petitioner failed to make reasonable reunification efforts.

Respondent makes several arguments regarding his position that he was denied an opportunity to meaningful participate in this case. Respondent did not raise these issues before the trial court, so our review is for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9.

First, respondent argues that he was not given adequate notice of the "initial proceedings." Respondent does not identify any proceeding that he was unaware of. Moreover, the record demonstrates that respondent participated in a family team meeting before the initial petition was filed. Thereafter, a notice of the preliminary hearing was mailed to respondent's address two weeks beforehand. Respondent was subsequently incarcerated, but petitioner did not learn about the arrest before the preliminary hearing and therefore could not make arrangements for him to attend. But respondent was able to attend the rescheduled preliminary hearing. Around the same time, respondent met with the worker in jail and agreed to participate with the treatment plan. Respondent later appeared before the court and pleaded no contest to the petition. Thus, respondent fails to show how he was prejudiced by any lack of notice in this case.

Respondent also contends that petitioner failed to follow and document the Absent Parent Protocol (APP) when he was absent from the proceedings. When a parent is absent from the proceedings, the caseworkers must make efforts to locate the parent. *In re Rood*, 483 Mich at 97. The APP offers guidance to workers searching for parents. *Id*. at 98. For much of the proceedings after respondent's six weeks of active participation, his location was unknown and he did not attend court hearings. Twice the trial court directed petitioner to complete an affidavit detailing their efforts under the APP. But the caseworker subsequently made contact with respondent and therefore did not believe that an affidavit was necessary. At the final pretrial before the termination hearing, the trial court again directed the caseworker to file an affidavit showing compliance with the APP. It does not appear that such an affidavit was filed.

Even assuming that petitioner did not fully comply with the APP, respondent fails to show prejudice. The record establishes that the caseworkers continuously made efforts to contact respondent. On numerous occasions, respondent did not follow up with caseworkers as discussed. Also, around the time that he moved to Georgia, he refused to give his location to the caseworkers. Accordingly, on this record, any lack of meaningful participation resulted from respondent's own lack of cooperation, not petitioner's efforts to locate respondent or its failure to file an APP affidavit.

Finally, respondent argues that the trial court erred in suspending his parenting time. In July 2017, the trial court suspended respondent's parenting time until he addressed the outstanding warrant for his arrest. In October 2017, the trial court suspended respondent's parenting time until he completed three consecutive negative drug screens.

We agree with respondent that the suspension of his parenting time was plainly erroneous. A trial court does not have unlimited discretion to suspend parenting time in child protective proceedings. Instead, suspension is only permitted when parenting time poses a risk of harm to the child:

> (13) If a juvenile is removed from the parent's custody at any time, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent shall not be less than 1 time every 7 days unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being. If the court determines that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being, the court may suspend parenting time until the risk of harm no longer exists. [MCL 712A.13a(13).]

Here, the trial court made no findings of harm, but instead conditioned parenting time on respondent addressing the outstanding warrant and complying with the service plan. But the trial court has no authority to suspend parenting time for those purposes.

That said, respondent has not shown prejudice from the trial court's error, i.e., that "it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Respondent stopped participating in this case and left the state without informing the caseworker or his attorney. He

-5-

next appeared before the court—by telephone—at the termination hearing. There is simply no indication that respondent would have taken a different course of action had his parenting time not been improperly suspended.

## III. BEST INTERESTS

Finally, respondent asserts that termination of his parental rights was not in the child's best interests. We review for clear error a trial court's determination regarding a child's best interests. MCR 3.977(K); *In re Mason*, 486 Mich at 152.

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). Factors relevant to a determination of a child's best interests include the child's bond to the parent, the parent's compliance with his or her case service plan, the parent's history of visitation with the child, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).

Respondent argues that his bond with the child and her relationship weighed against termination. The record demonstrates that, during the handful of visits that he spent with the child, respondent was appropriate and the child enjoyed being with him. The caseworker testified that, during those few visits, the child had not bonded with respondent, but they were working to develop a bond. However, the worker opined that the bond no longer existed after more than a year without contact. Further, the worker opined that respondent's parenting abilities needed "a lot of improvement," and the trial court found that it was unlikely that respondent would be able to participate and benefit from services within a reasonable time. Given respondent's history of abandoning the child, the trial court did not clearly err in finding that the child's need for permanency outweighed the parental bond.

Respondent also notes that the child was placed with her maternal grandmother, which weighs against termination. See *In re Mason*, 486 Mich at 164. But the court found that relative placement did not weigh against termination in this case because the maternal grandmother was not related to respondent and they did not get along. Further, the evidence showed that the child was thriving in the grandmother's care and the grandmother facilitated the child's relationships with both the maternal and paternal extended family members. In addition, the plan was for the child to be reunited with her mother shortly after the termination hearing. The mother was in compliance with her treatment plan and she shared a strong bond with the child. In sum, given the child's need for permanency and respondent's repeated failure to prioritize the child, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Respondent also argues that the trial court failed to state its best-interest findings and conclusions on the record or in writing. Following a hearing on a petition to terminate parental rights, the trial court "shall state on the record or in writing its findings of fact and conclusions of law." MCR 3.977(I)(1). "Brief, definite, and pertinent findings and conclusions on contested

matters are sufficient." *Id.* The trial court made numerous findings, including some solely related to the child's best interests, before concluding that termination of respondent's parental rights was appropriate under multiple statutory grounds and in the child's best interests. The trial court was not required to bifurcate its findings so long as it considered all relevant factors. Accordingly, respondent has not shown any error.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro